IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY THOMPKINS, EZRA DIXON, and KIM NEAL, | ) Civil Action No: 2:24-cv-00008 ) |
| Plaintiffs, | ) Chief Judge Mark R. Hornak ) ) |
| v. | ) ) *Electronically Filed* |
| CITY OF MCKEESPORT POLICE DEPARTMENT, et al, | ) ) ) |
| Defendants. | ) JURY TRIAL DEMANDED ) |

**DEFENDANTS CITY OF MCKEESPORT POLICE DEPARTMENT AND CITY OF MCKEESPORT, MARK STEELE, ADAM ALFER, AND DANTE DIBERADIN'S BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS AMENDED COMPLAINT (ECF 21) AND TO STRIKE SELECT PARAGRAPHS OF THE AMENDED COMPLAINT**

**SUMMARY OF ARGUMENT**

Plaintiffs, three persons who allege they were discriminatorily subjected to police searches and seizures, have brought Federal Civil Rights claims against The City of McKeesport, its Police Department, and members of the Police Department. The City of McKeesport and McKeesport Police Department (together hereinafter known as "the City") and Defendants Steele, Alfer, and Diberadin move to dismiss portions of the Amended Complaint that are inappropriately plead against the City or do not support a private cause of action. In addition, the Defendants move this Court to strike paragraphs of the Amended Complaint that inappropriately refer to third-party writings outside of the record, such as newspaper articles, studies, and prior lawsuits.

I.      SUMMARY OF THE CASE

On or about December 20, 2020, McKeesport police arrested Koby Lee Francis for violation of a protection-from-abuse order.  In the course of the arrest, Mr. Francis shot McKeesport Police Officer Gerasimos Athans and fled the scene.  Police conducted a days-long manhunt for Mr. Francis.  During that manhunt, several citizens' vehicles and homes were searched.  Am. Comp., ¶ 3, ECF Doc. 21.  Plaintiffs are three such citizens who allege that they were treated more aggressively than white citizens were.  *Id*. at ¶¶ 4 - 6.

Plaintiff Neal is Mr. Francis's mother.  Plaintiff Neal alleges that even though Mr. Francis did not live in her home, the Defendants lacked probable cause to believe that Mr. Francis was in her home or her vehicle, yet repeatedly subjected her to warrantless searches and seizures.  *Id*. at ¶ 6.  The two other Plaintiffs, Ms. Thompkins and Mr. Dixon, do not have a connection to Mr. Francis, but raise the same allegations.  *Id.* at ¶ 5.  Plaintiffs allege: "The Police Defendants used violence, intimidation and unwarranted force while searching Plaintiffs without any probable cause or individualized suspicion.  Meanwhile, the same police treated white residents of the same McKeesport neighborhoods – including those who had some connection to Mr. Francis – much less harshly than they treated Plaintiffs.  *Id*. at ¶ 8.  Plaintiffs further allege the City "provided inadequate training to the Police Defendants and other officers under its supervision pertaining to the appropriate search tactics and shows and use of force to employ in given circumstances, prohibitions against illegal entries, unlawful searches, and concerning when and how to intervene to stop unlawful conduct by fellow officers." Id. at ¶ 61.  Defendants deny these allegations; however for the purposes of this Motion will accept them as true.

Conversely, there are portions of Plaintiffs' Amended Complaint that should not be considered. To support their allegations, Plaintiffs cite to the following:

- October 6, 2023 WPXI article *McKeesport swears in new police chief*. ECF Doc. 21 at ¶ 20, FN 1, ECF Doc. 21;

- December 22, 2020 CBS News Pittsburgh article titled *Police Accused of Executing Aggressive, Warrantless Searches in Hunt for McKeesport Shoot Suspect Koby Francis*. *Id*. at ¶ 25 FN 2;

- December 20, 2020 Trib Live article titled *Police ask public's help to find man accused of shooting McKeesport officer outside station*. *Id*. at ¶ 34, FN 4;

- March 23, 2019 Press Release by Rep. Austin Davis, et al, *Lawmakers comment on acquittal of white police officer in fatal shooting of Antwon Rose*. *Id.* at 65, FN 5;

- Citizen comments from the April 7, 2021 *Minutes of Regular Meeting of McKeesport City Council*. *Id.* at ¶ 66, FN 6-8;

- May 15, 2020 Nation article, *Breonna Taylor Was Murdered for Sleeping While Black*. *Id.* at ¶ 67, FN 9;

- 2023 Police Scorecard for McKeesport, PA (policescorecard.org). *Id*. at ¶ 68, FN 11; and

- March 10, 2023 lawsuit by ACLU against McKeesport for allegedly inappropriately closing its meetings to the public. *Walker-Montgomery v. McKeesport City Council*, G.D. No. 21-1723, (Pa. Com. Pl. Mar. 10, 2023). *Id.* at ¶ 70, FN 18.

The above bulleted sources all reference civilian-gathered data or opinions. None purports to be Plaintiffs' first-hand accounts. They are presented only to prove the "truth" of their assertion that the subject searches were the result of racial animus. As set out below, Defendants move to strike these references from the Amended Complaint so that they may not be considered as truth for purposes of this Motion or further proceedings.

II.     **STANDARD OF REVIEW FOR MOTION TO DISMISS**

Federal notice and pleading rules require a complaint to provide the defendant notice of the claim and the grounds upon which it rests. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232

(3d Cir.2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See *In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir.2010)*. The court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." See *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id*. Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation omitted). Plaintiffs' Amended Complaint fails to sufficiently plead several counts of the Amended Complaint.

**III.     ARGUMENT**

    **A.     PLAINTIFFS' REFERENCES TO THIRD-PARTY SOURCES ARE IMMATERIAL AND IMPERTINENT**

Plaintiffs' Amended Complaint inappropriately includes references to news articles, previous lawsuits and studies about the stops alleged in their pleadings and generalized racial animus in the police community.  As these references have no evidentiary value at this stage, they should not be included in the Amended Complaint.  Further, these references are not parts of the "short and plain" statements in support of a claim envisioned to be appropriate in a pleading per Civ.R. 8.  "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from the plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Blue Gentian, LLC v. Telebrands Corp*., 2014 WL 2999068, *7 (D.N.J. Jul. 1, 2014) quoting *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J.2002)**.**  Although Civ.R. 12(f) motions to strike are highly disfavored, where matters in the complaint are redundant, immaterial, impertinent, or scandalous, a motion to strike may be granted if the presence of the surplusage will prejudice the adverse party.  *Cabrera v. Nazor*, 2024 WL 310523, *8 (D.N.J. Jan. 25, 2024), citing *F.T.C. v. Hope Now Modifications, LLC,* No. CIV. 09-1204 JBS/JS, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011).  Plaintiffs' references to third-party sources are prejudicial surplusage that should be stricken.

A court has considerable discretion when considering a motion to strike.  *Cabrera,* at *2 (internal citation omitted); see also *Tonka Corp. v. Rose Art Indus., Inc*., 836 F. Supp. 200, 217 (D.N.J. 1993).  To strike a portion of a pleading, the movant must demonstrate how they are prejudiced by the offending language, or how the language may unduly complicate the impending proceedings.  *Cabrera*, supra at * 9.  When faced with a motion to strike, a court

should consider the practical difficulty of deciding cases without a factual record. *Tonka Corp., supra* citing *United States v. Consolidation Coal Co.*, No. 89–2124, 1991 WL 333694 at *1 (W.D.Pa. Jul. 5, 1991). The court should also carefully weigh a motion to strike and whether ruling on the motion will require the court to evaluate legal issues before the factual background of a case has been developed. *F.D.I.C. v. White*, 828 F.Supp. 304, 307 (D.N.J.1993).

Those concerns are not relevant here. Defendants request that the Court strike references to news articles, lawsuits, and studies that Plaintiffs have referenced in their Amended Complaint. These articles, lawsuits and studies do nothing to develop the record and would improperly be considered as "true" for purposes of evaluating the Amended Complaint. Courts support striking extraneous evidentiary material in the pleadings when it is prejudicial or inadmissible, like these news articles, lawsuits, and studies that purport to show a general racial animus. *Blue Gentian*, supra 2014 WL 2999068, *7.

Defendants seek to strike Paragraphs 20 (FN 1), 25 (FN 2), 34 (FN 4) and Paragraphs 65 through 71 (including FN 5-9, 11 and 18) of Plaintiffs' Amended Complaint as impertinent allegations that reference news articles, lawsuits, or studies that only generally refer to Plaintiffs' allegations. These news articles and studies have no evidentiary value and are inadmissible to prove the truth of the matters alleged. As such, the references are only prejudicial surplusage. News articles are not, as presented without other evidentiary context in the Amended Complaint, "reducible to admissible evidence and, therefore, they cannot properly be considered." *Adams v. Cnty. of Erie, Pa.*, 2011 WL 4574784, *23, aff'd, 558 Fed.Appx. 199, (referring to evidence in support of summary judgment); see also Evid. R. 801, 803(5), and 807 (articles are not admissions by a party opponent, do not offer a recorded recollection that is otherwise unavailable, and do not fit the hearsay residual exception). Likewise, studies presented without

6

authenticating and substantive testimony are inadmissible hearsay. *Pennsylvania State Lodge Fraternal Order of Police v. Twp. of Springfield*, -- F.Supp.3d --, 2023 WL 7547494, *7, 122 Fed.R.Evid.Serv.2704 (Nov. 13, 2023). Moreover, the studies reference events that are unrelated to Plaintiff's claims and are thus irrelevant. In addition, a lawsuit regarding Pennsylvania sunshine laws purporting to show alleged racial animus is likewise insufficient to form a factual allegation and are likely to be ultimately inadmissible. *Palmer v. Nassan*, 454 Fed.Appx. 123, 126 (3rd Cir.2011). By supporting their allegations with third-party content, Plaintiffs serve only to inflame prejudice. These should not be considered a statement of fact through Defendants' early dispositive motion briefing. Such a presumption would be unduly prejudicial to Defendants as it would force them to respond to and defend against statements beyond the scope of admissible and relevant evidence. For these reasons, this Court should exercise its discretion and strike the references in this Amended Complaint that reference and incorporate third-party publications.[1]

### B. A MUNICIPALITY CANNOT BE LIABLE THROUGH RESPONDEAT SUPERIOR

Plaintiffs seek to hold the City liable for alleged civil rights violations simply through its employment relationship with the Police Defendants pursuant to the legal theory of respondeat superior. See Counts I through V. A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

Counts I, III and V of Plaintiffs' Amended Complaint raise 42 U.S.C. § 1983 actions for unlawful search and seizure, excessive force, and racial discrimination against "all Defendants."

---

[1] Defendants do not seek to strike reference to U.S. census Bureau data referenced in the Amended Complaint.

7

Claims II and IV make the same allegations but relying on the Pennsylvania Constitution. Although Plaintiffs allege that all of these actions were taken under the color of law through the individual defendants' employment with the City of McKeesport, that allegation is insufficient to hold the City liable. To hold a municipality liable under 42 U.S.C. § 1983, a plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact. *Thomas v. City of Philadelphia*, 290 F.Supp.3d 371, 387 (E.D.Pa 2018) citing *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Plaintiffs raise these allegations in Count X of the Amended Complaint. Therefore, it is improper to include the City in the other claims alleging civil rights violations.

### C. THE PENNSYLVANIA CONSTITUTION DOES NOT SUPPORT PRIVATE CAUSES OF ACTION

Plaintiffs invoke Article I, Section 8 of the Pennsylvania Constitution in Claims II, IV, and VII of their Amended Complaint. However, this Section does not support a private cause of action. Article I, Section 8, "Security from searches and seizures," reads:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

The phrasing of Article I, Section 8 of the Pennsylvania Constitution is almost identical to that of the Fourth Amendment. *Jones v. City of Philadelphia*, 890 A.2d 1188, 1194 (Pa.Cmmw.Ct.2006) citing David Rudovsky, Searches and Seizures, in The Pennsylvania Constitution—A Treatise on Rights and Liberties 299, 300 (Ken Gormley ed., 2004). In *Jones,* the Pennsylvania Commonwealth Court held that § 8 did not embody a private cause of action for monetary damages in an excessive force case. *Id.* See also *Hall v. Raech*, 2009 WL 811503, *6 (M.D.Pa 2009). In *Jones*, the court found that the plaintiff had alleged the circumstances of

8

excessive force during an arrest that were adequately protected by the Fourth Amendment of the Federal Constitution.  Likewise here, the Plaintiffs have simultaneously alleged Fourth Amendment violations.  Since there is no evidence that the protection against the use of excessive force in Article I, Section 8 is broader than the Fourth Amendment, there is no private right of action in the state constitution. *Jones*, 890 A.2d at 1216.  More recently, and similar to the analysis of Section 8 in *Jones*, the Western District of Pennsylvania assessed Article I, Section 13 of the Pennsylvania Constitution, which is similar to the Eighth Amendment, and found more broadly that "Pennsylvania has not created a private cause of action for money damages for violations of the Pennsylvania Constitution." *Smith v. Ohrman*, 2023 WL 5944115, *5, report and recommendation adopted, 2023 WL 5167507 (W.D.Pa 2023); see also *Balletta v. Spadoni*, 47 A.3d 183, 193 (Pa.Cmmw.Ct.2012).

Therefore, Claims II, IV, and VII of the Amended Complaint should be dismissed, with prejudice.

      **D.**      **PLAINTIFFS FAIL TO ALLEGE A NEXUS TO FEDERAL FINANCIAL ASSISTANCE**

Count VI of Plaintiffs' Amended Complaint pleads a violation of 42 USC § 2000d, Title VI of the Civil Rights Act of 1964.  It is noteworthy for purposes of this argument to note that this particular claim is asserted as against both municipalities and the individual defendants.

Title VI prohibits discrimination "on the ground of race, color, or national origin" and specifically protects an individual's right to participate in and receive the benefits of any program or activity receiving federal financial assistance.  See also, *Fathi v. Saddleback Valley Unified School Dist.*, 2020 WL 7315462, *4 (C.D.Cal. Oct. 28, 2020).  Plaintiffs' allegation is broader – they allege that this statute prohibits discrimination by any entity receiving federal financial assistance and creates a private right of action.  ECF Doc. 21 at ¶ 145.  Plaintiffs exclude the

9

beneficiary required of 42 U.S.C. § 2000d.  Plaintiffs allege that since the City of McKeesport received financial assistance from the "Department of Justice; the American Rescue Act; and Coronavirus Aid, Relief, and Economic Security (CARES) Act," that they were denied the benefits of that assistance when they were allegedly discriminated against by police searches.  ECF Doc. 21 ¶¶ 147, 150.  However, Title VI of the Civil Rights Act is not intended to support claims, such as Plaintiffs', where there is no direct connection between the alleged discrimination and the federal financial aid.

Title VI prohibits federal funding from serving an ultimately discriminatory purpose.  *Grove City Coll. v. Bell*, 687 F.2d 684, 691 (3d Cir. 1982).  However, "[i]n order to establish standing to sue under [Title VI] plaintiffs must be the intended beneficiaries of the federal spending program."  *Foremanye v. Univ. of Pennsylvania*, 1996 WL 684242, *2 (E.D.Pa. Nov. 21, 1996), citing *Scelsa v. City Univ. of New York*, 806 F. Supp. 1126, 1140 (S.D.N.Y. 1992); *Burks v. City of Philadelphia*, 950 F.Supp. 678, 682–83 (E.D.Pa.1996) ("the first issue is whether the alleged racial discrimination occurred "under a program or activity receiving federal financial assistance.").  To state a plausible Title VI claim, the Plaintiffs herein needed to assert that they personally received or were personally intended to benefit from the financial assistance through these programs.  Plaintiffs did not state, and cannot prove, that the searches occurred under a program or activity receiving federal financial assistance.  Plaintiffs' only allegation is that "[u]pon information and belief, Defendants received federal financial assistance from the Department of Justice; the American Rescue Act; and the Coronavirus Aid Relief, and Economic Security (CARES) Act."  ECF Doc. 21 at ¶ 147.  Whether any of this alleged federal assistance relates to police operations is never alleged.

In *Brown-Dickerson v. City of Philadelphia*, the court assessed a Title VI claim in a case in which a police officer shot and killed a person during an allegedly racially-motivated traffic stop. *Id.*, 2016 WL 1623438 (E.D.Pa. Apr. 25, 2016). In that matter, the plaintiff alleged that "'the (police) (d)epartment receives funding and grants 'covering the subjects of law enforcement, traffic stops, use of force, arrest, search, seizure, reasonable suspicion, and probabl[e] cause' (and that) persons 'who come into contact with police, including decedents, are the intended beneficiaries of the federal funding.'" *Id*. at *8. That court found that Ms. Brown-Dickerson lacked standing because "Title VI does not contemplate such an attenuated relationship between federal funding and (a) plaintiff." *Id*. In addition, the court found that the plaintiff had not plead with requisite specificity the federal funding the defendant received or how that funding was used in any program in which the plaintiff was an intended beneficiary. Distilling the argument, the *Brown-Dickerson* court found that a plaintiff cannot use "Title VI to bring what is, in essence, a failure to train claim." *Id.* at * 8, citing *Massi v. City of Philadelphia*, 2013 WL 1194643, *5 (E.D.Pa. Mar. 25, 2013). Plaintiffs' Amended Complaint falls into the same pleading deficiencies as the *Brown-Dickerson* plaintiff. Following the recitation of the types of federal aid McKeesport allegedly received, the Plaintiffs allege that "the Defendants (discriminated against the Plaintiffs) through policy, practice, custom, and/or the direction of policymaking, supervising and managing personnel(.)" ECF Doc. 21 at ¶ 150. Their vague allegations amount to nothing more than an implication that, with the federal funding, the City of McKeesport should have improved policy and training to avoid the alleged damage to the Plaintiffs. This is not enough to make a plausible 42 U.S.C. § 2000d claim.

Plaintiffs only plead that all of the residents of McKeesport and the county were intended beneficiaries of the financial assistance. ECF Doc. 21 at ¶¶ 147-148. Such a broad

11

understanding of beneficiary, without any analysis as to the purpose of the federal funding in the pleading, is insufficient.  As a matter of contrast, in *NAACP v. Wilmington Medical Center, Inc.*, 453 F. Supp. 330 (D.Del 1978), the court analyzed the plaintiffs' connection to funds delivered to a medical center.  The court found that the medical center received federal funding to provide services to an urban population, but the medical center wanted to relocate their urban services to a suburban area.  Therefore, the defendant's plan would "necessarily impact disproportionately upon the poor, the aged, the blacks, ethnic minorities, and the handicapped." *Id.* at 339.  The plaintiffs, as members of those categories, were beneficiaries pursuant to Title VI with standing to "seek to insure that a private hospital's decision to relocate the major components of its urban hospital system to a suburban location is neither motivated by nor has the effect of unlawfully discriminating against blacks, the handicapped or other minorities." *Id.*

In the instant case, Plaintiffs failed to plead any relationship between the federal funding and their grievance.  Plaintiffs' attempt to correlate the federal funding to the alleged discriminatory searches and/or force by merely stating that the City of McKeesport has a policy and practice of racial discrimination.  ECF Doc. 21 at ¶¶ 150-151.  As funding intended to aid the general public, there is an insufficient correlation to establish standing.  Furthermore, the style of pleading is noteworthy that this particular claim includes the individual defendants yet it is no alleged that any individual defendant personally received such funding.  Rather, the pleading appears to insinuate that because the municipalities received such funding that each individual defendant is liable for the funding received by their employer.  This concept is not recognized in the law.  Since vague and conclusory statements are insufficient to survive a motion to dismiss, Count VI as to the municipalities as well as the individual defendants fails under Civ. R. 12(B)(6) and Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).

### E. PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE CIRCUMSTANCES THAT WOULD SUPPORT A CONSPIRACY AGAINST THE CITY

As previously established, a municipality cannot be held liable for an employee's civil rights violation in an allegation of conspiracy under a respondeat superior theory. Count VII of Plaintiffs' Amended Complaint is an allegation against all Defendant for a conspiracy to violate the Fourth Amendment. To support their conspiracy allegations, the Plaintiffs allege that the "Individual Defendants" committed constitutional violations and failed to fulfill their obligations as police officers by failing to intervene. ECF Doc. 21 at ¶ 163. These are allegations against officers in their official capacities. There are no factual allegations in the conspiracy claim against the municipality. It is apparent that the Plaintiffs rely on respondeat superior as the legal theory to support McKeesport's inclusion in the conspiracy claim. However, a municipality may not be held liable under § 1983 solely because it employs an alleged tortfeasor. *Doherty v. Haverford Tp.*, 513 F.Supp.2d 399, 407 (E.D.Pa. 2007), citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 (1978). Furthermore, suits against public employees in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Since a conspiracy requires a combination of two or more persons, when a plaintiff pleads allegations against employees arising only in their official capacity, and against a municipality, the plaintiff does not fulfill the numerosity requirement of a conspiracy. *Suber v. Guinta*, 902 F.Supp.2d 591, 608-609 (E.D.Pa 2012). For these reasons, the conspiracy claim must be dismissed as against the City.

### IV. CONCLUSION

For all of the foregoing reasons, the City of McKeesport and McKeesport Police Department respectfully request the court strike the above-cited references to outside sources and

dismiss these Defendants from Counts I through V as they seek to create liability through respondeat superior; Counts II, IV, and VII as there is no private right of action created by Article I, Section 8 of the Pennsylvania Constitution, Count VI as Plaintiffs have failed to allege a nexus between federal funding and their alleged civil rights violations; and Counts VII and VIII for the reasons set out above, but also because the City cannot conspire with itself. Defendants City of McKeesport, McKeesport Police Department, Mark Steele, Adam Alfer, and Dante Diberandin respectfully request that this Court grant its Partial Motion to Dismiss and to Strike.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: *s/ Paul D. Krepps*
PAUL D. KREPPS, ESQUIRE
PA ID #73038
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
412-803-1149 Phone
412-803-1188 Fax

Counsel for the CITY OF McKEESPORT POLICE DEPARTMENT, THE CITY OF MCKEESPORT, MARK STEELE, ADAM ALFER, BRENDA SAWYER, AND DANTE DIBERADIN, only